# United States District Court
for
## Middle District of Tennessee

## Superseding Petition for Warrant for Offender Under Supervision
### [Supersedes Petition Filed as Docket Entry No. 65]

Name of Offender: <u>Randy L. Fielder</u>　　　Case Number: <u>3:12-00190-01</u>

Name of Current Judicial Officer: <u>Honorable Kevin H. Sharp, Chief U.S. District Judge</u>

Name of Sentencing Judicial Officer: <u>Honorable William J. Haynes, Jr., U.S. District Judge</u>

Date of Original Sentence: <u>July 22, 2013</u>

Original Offense: <u>18 U.S.C. § 2113(a) and (d), Armed Bank Robbery</u>

Original Sentence: <u>36 months' custody followed by 3 years' supervised release</u>

Type of Supervision: <u>Supervised Release</u>　　　Date Supervision Commenced: <u>July 2, 2015</u>

Assistant U.S. Attorney: <u>Lee Deneke</u>　　　Defense Attorney: <u>Dumaka Shabazz</u>

## PETITIONING THE COURT

____ To issue a Summons.
____ To issue a Warrant.
__X__ To Consider Additional Violations/Information.

## THE COURT ORDERS:
☐ No Action
☒ The Consideration of Additional Violations/Information
☐ The Issuance of a Warrant:
　　☐ Sealed Pending Warrant Execution
　　　(cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☐ Other

Considered this 17th day of October, 2016,
and made a part of the records in the above case.

_____
Kevin H. Sharp
Chief U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct. Respectfully submitted,

_____
James Foster
U.S. Probation Officer

Place　Nashville, TN

Date　October 13, 2016

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. 65, has been amended as follows:

 Violation No. 1 - was amended to provide updated information.

 Violation No. 2 - was amended to provide updated information.

 Compliance with Supervision Conditions - was amended to provide updated information.

 Update of Offender Characteristics - was amended to provide updated information.

| Violation No. | Nature of Noncompliance |
|---|---|
| 1. | **The defendant shall continue mental health treatment while on supervised release.** |

 Mr. Fielder did not take medications which were prescribed to treat his mental health issues, refused for several months to meet with a licensed medication provider in order to discuss returning to medication compliance in the future, and failed to attend individual therapy sessions with sufficient regularity for those sessions to be effective.

 Upon initiating his period of supervised release, Mr. Fielder was referred for mental health treatment at Centerstone Mental Health, in Nashville, Tennessee, where he was diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder. In September 2015, he was assessed by a medication provider and was prescribed the psychiatric medications Buspirone (an anti-anxiety medication) and Citalopram (an anti-depressant). Additionally, it was recommended that Mr. Fielder attend individual therapy sessions twice per month.

 In March 2016, Mr. Fielder admitted that he had stopped taking his prescribed medications many weeks prior, despite having previously assured the probation officer on several occasions that he was complying with his medication regimen. During several subsequent discussions, the probation officer encouraged Mr. Fielder to take his medications but he refused to do so. Mr. Fielder, who has an extensive mental health treatment history which predates his conviction for the instant federal offense, has stated that he doesn't like taking medications because they "mess with [his] head," they "make [him] feel tired," and he believes that he isn't meant to put chemicals into his body. Mr. Fielder maintains that he would rather voluntarily attend faith-based substance abuse treatment meetings in Dickson, Tennessee, and that he has received "a calling" from God to open and operate a drug treatment center.

 The probation officer encouraged Mr. Fielder to attend a meeting with a medication provider in order to discuss whether or not he, in the view of a treatment professional, would benefit from continued use of medication. Between October 2015 and April 2016, four such medication monitoring appointments were scheduled for Mr. Fielder, but he missed or cancelled all of them. Consequently, the medication provider was unable to assess Mr. Fielder during that period to determine if his mental health status had improved, declined, or remained the same as it was when his need for medication was originally assessed. As a result of Mr. Fielder having missed so many appointments, each of which represented a significant waste of time and resources on the part of the treatment provider, Centerstone

declined to schedule any further medication monitoring appointments until assurances could be made that Mr. Fielder would attend those appointments in a timely fashion.

Following the submission of a petition to the Court on May 3, 2016, Mr. Fielder consented to attend a medication monitoring appointment on May 20, 2016, whereupon he reiterated his desire not to take any psychiatric medication, stating that he believed he was doing well without such medication. Consequently, no psychiatric medication was prescribed to the defendant and no further medication monitoring appointments were scheduled.

Mr. Fielder's attendance of individual therapy sessions became noticeably more erratic after his discharge from Diersen Charities Residential Reentry Center, in Nashville, in early November 2015. **Between November 2015 and August 10, 2016, Mr. Fielder attended only six therapy appointments, and missed five.** In several cases, Mr. Fielder missed appointments entirely or arrived too late to be seen by his therapist, and rescheduled his appointments to take place as soon as possible thereafter. However, when Mr. Fielder reported for therapy appointments he did so in a very hurried fashion, essentially "dropping-in" on short notice and thereby allowing only short, abbreviated sessions with his therapist. Mr. Fielder cited his busy work schedule as the reason he couldn't attend therapy appointments in a timely fashion. Although the therapist attempted to accommodate Mr. Fielder, the therapist reported that these brief and unscheduled "drop-in" appointments were not sufficient in their duration or frequency to satisfy Mr. Fielder's treatment plan or his treatment needs. The probation officer discussed with Mr. Fielder the option of transferring his treatment services to a Centerstone location in Dickson, where he resided until July 2016. Mr. Fielder declined to allow the probation officer to transfer his treatment services to Dickson, because his employer is based out of Nashville, and he reportedly spent less than seven hours per workday there, and spent most of that time in transit or asleep. Additionally, Mr. Fielder stated he didn't wish to be assigned a new therapist, which would have been necessitated by such a transfer, because he liked his current therapist very much.

**Between May 3, 2016, and August 10, 2016, Mr. Fielder attended one individual therapy session, on May 20, 2016.** He cancelled a subsequent session which had been scheduled to take place on July 1, 2016, and failed to appear for a session on August 2, 2016. **However, Mr. Fielder subsequently resumed attendance of his therapy sessions and appeared for all scheduled appointments, in which he reportedly participated well. Consequently, Mr. Fielder was successfully discharged from mental health treatment services at Centerstone on September 30, 2016.**

2.  **The defendant shall not commit another federal, state, or local crime.**

On the evening of July 9, 2016, in the vicinity of Nissan Stadium, in Nashville, Tennessee, Mr. Fielder purchased and resold several fraudulent tickets to music concert being held at the stadium that night.

Mr. Fielder advised the probation officer that he purchased the tickets from an unspecified individual at a nearby Exxon gas station, sold three of the tickets to a female individual, then attempted to use one of the tickets to enter the concert. The defendant was reportedly turned away from the venue because his ticket was fraudulent. Mr. Fielder was subsequently approached by an officer of the Metro Nashville Police Department, who had been directed to Mr. Fielder by the female individual to whom he had earlier sold fraudulent tickets. Mr. Fielder reports that he readily admitted his conduct to the officer and explained that he had

been unaware the tickets were fraudulent. The officer generated two Incident Reports (No. 20160618587 and 201606866), one identifying Mr. Fielder as a victim of "Fraud - Swindle," and the other identifying the defendant as the suspect of "Fraud - Swindle," in which case two female individuals were identified as victims. **According to those reports, Mr. Fielder had genuinely believed that the tickets he purchased and then resold were legitimate. Furthermore, when Mr. Fielder sold the tickets to the aforementioned female individuals, he allowed them to take a cellular phone photograph of his drivers license in case any issues arose regarding the tickets. Additionally, once notified that the tickets were fake, Mr. Fielder returned the money paid to him by the female individuals. The female individuals wished not to press any charges against Mr. Fielder, and the responding officer believed that Mr. Fielder had not been aware that the tickets were fake. Consequently, Mr. Fielder was not charged in relation to the aforementioned conduct.**

## Compliance with Supervision Conditions and Prior Interventions:

Randy Fielder began supervision in the Middle District of Tennessee on July 2, 2015, and is scheduled to terminate supervision on July 1, 2018. He currently resides in Nashville, Tennessee, where he is employed driving a dump truck for Shane Trucking & Excavating.

When Mr. Fielder began his term of supervised release, he was designated to reside at Diersen Charities Residential Re-entry Center (RRC), in Nashville, in accordance with special condition that he be confined at a halfway house for the duration of his supervised release period. On November 4, 2015, on the basis that Mr. Fielder had, up to that point, been compliant with his supervised release conditions and attained a suitable residence, defense counsel submitted a motion, agreed upon by the Probation Office and the Assistant U.S. Attorney, that Mr. Fielder's supervised release conditions be modified to remove the requirement that he reside at the RRC. Later the same day, that motion was granted by the Court and Mr. Fielder moved to his previous residence, in Dickson, on November 10, 2015.

On December 17, 2015, a review of Mr. Fielder's drug testing records from the RRC revealed a test report indicating that Mr. Fielder tested positive for the presence of cocaine in a urine specimen collected from him at that facility on September 27, 2015. The test report was sent to the Probation Office on October 16, 2015, but no contact was received from Mr. Fielder's case manager regarding the test result. When questioned regarding the test report, Mr. Fielder denied having ever used any illicit substances while residing at the RRC, and denied having ever been notified by RRC staff that he tested positive for cocaine. Inquiries were made to RRC staff, who reviewed Mr. Fielder's file and found no record of him having ever tested positive while residing there. RRC staff further noted that, had Mr. Fielder tested positive, his case manager would have provided additional, timely notification to the probation officer. Mr. Fielder has submitted over a dozen other urine specimens since he began supervision, all of which tested negative for the presence of any illegal drugs.

As previously noted, Mr. Fielder was referred for substance abuse and mental health treatment at Centerstone Mental Health, in Madison, Tennessee, where he was diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, and Cocaine and Opiate Use Disorders, with both of the latter disorders in remission. His mental health treatment history includes hospitalizations in 2007 and 2011, following periods of suicidal ideations and a suicide attempt, as well as twice-monthly outpatient treatment prior to his arrest for the instant federal offense, in 2012. While incarcerated, Mr. Fielder was diagnosed as suffering from Mood Disorder Not Otherwise Specified, and was prescribed psychiatric medications including Depakote, Celexa, and Lithium. He reportedly received no psychiatric medication for the last nine months of his federal prison term because he was placed in the Special Housing Unit during that period, in solitary confinement, as a result of several disciplinary infractions.

During his initial meeting with the probation officer, Mr. Fielder reported that he suffers from Bipolar Disorder and has experienced symptoms including heightened anxiety, excitability, scattered thoughts, and aggression. He advised that he is often reluctant to acknowledge his mental health issues and has previously wavered in his compliance with prescribed psychiatric medication, because he doesn't want to feel that there's "something wrong" with him and doesn't want to be dependent upon medications for the rest of his life.

As previously noted, Mr. Fielder is employed as a commercial dump truck driver, in which capacity he works up to 70 hours per week. Mr. Fielder has advised that he does virtually nothing except work. Additionally, when he resided in Dickson, Tennessee, his work schedule left only nine hours per day for him to commute home from work, sleep, and commute back to work the following morning. Mr. Fielder admitted that he drove very fast between Nashville and Dickson, in order to have sufficient time to sleep, which led him to receive several traffic citations. Between January 1 and February 16, 2016, Mr. Fielder received two citations for Speeding and one citation for Driving Without a Seatbelt. He was also stopped for Speeding, but did not receive a citation, on another occasion during the same period. Mr. Fielder reported that he paid all fines related to those citations, and a search of the Tennessee Department of Safety online database revealed no unpaid fines. According to the Tennessee Department of Safety, traffic violations result in the accumulation of points, and Mr. Fielder has thus far accumulated 7 points. Should he accrue a total of more than 11 points within the next seven to eight months, his license will be suspended. A driver who has accumulated more than 11 points could avoid license suspension through attendance and successful completion of an eight-hour defensive driving class, after which a driver would be placed on a form of driving-related "probation." During such a probationary period, which would last for one year, two additional violations would result in full suspension of a driver's license. In that case, a driver's license could only be reinstated by a traffic court judge, and only in a restricted capacity.

Recently, Mr. Fielder requested permission for lengthy, extensive, and recurring travel outside of the Middle District of Tennessee. Specifically, he wished to begin a new employment position driving a commercial truck between Nashville, Louisville, Kentucky, and Detroit, Michigan. The proposed truck route would necessitate that Mr. Fielder remain outside of the Middle District of Tennessee for approximately five out of every seven days per week. The probation officer declined to grant Mr. Fielder permission for such extensive out-of-district travel on the basis of concern for his mental health status and his apparent instability with regard to driving. Mr. Fielder initially offered to take his psychiatric medication in exchange for permission to travel, but the probation officer again declined, explaining that mental health treatment compliance and stability are positive goals to be pursued and achieved in and of themselves, not bargaining pieces to be traded or exchanged for other ends. The probation officer also noted that Mr. Fielder has previously claimed to be compliant with his medication regimen when he actually wasn't, casting doubt upon his promises to take prescribed medication in the future. Mr. Fielder agreed with these points and reiterated his refusal to take medication, stating (in writing) "nobody will be able to convince me to take psych medication ever again." Although he has stated that he respects the probation officer's decision not to grant him the aforementioned travel permission, Mr. Fielder asked that he be allowed to bring the matter before the Court in the context of the violation hearing requested herein. Mr. Fielder has also stated his desire to ask that the Court grant early termination of his supervised release term.

**On July 11, 2016, Mr. Fielder reported that, since December 8, 2015, he had received treatment for opioid addiction at Behavioral Health Group (BHG), in Nashville. Initially, that treatment involved daily, monitored ingestion of Suboxone, a combination of Buprenorphine and Naloxone which is taken as a substitute for other addictive opioid medications. As of the date of this report, Mr. Fielder ingests Suboxone once daily, unsupervised. He also attends counseling at BHG once per month and undergoes random drug testing at that facility.** Mr. Fielder had previously advised the probation officer that he was independently attending substance abuse counseling, but had not disclosed that he was participating in any form of treatment which involved the ingestion of Suboxone, which is itself a controlled substance with potential for addiction. When asked why he had not disclosed that information, Mr. Fielder insisted that he had previously reported his Suboxone treatment not only to the probation officer, but also to his Centerstone therapist. However, neither the probation officer nor Mr. Fielder's Centerstone therapist had any record or

recollection of his having previously disclosed that information. **Since August 10, 2016, Mr. Fielder has provided the probation officer with copies of records pertaining to the substance abuse treatment he receives at BHG, including his prescription for Suboxone.**

### Update of Offender Characteristics:
The Probation Office submitted a Petition for a Summons (filed as docket No. 54) on May 3, 2016, on the basis of the alleged violations, and Mr. Fielder's case was reassigned to Your Honor on May 4, 2016. On May 5, 2016, a summons was ordered by the Court ordering that Mr. Fielder appear at the U.S. Marshals Service on or before May 19, 2016. **On that date, Mr. Fielder reported to the U.S. Marshals Service and an initial appearance was subsequently held before Magistrate Judge John S. Bryant, who ordered that Mr. Fielder be released pending a hearing which was held before Your Honor on August 12, 2016. On that date, the Court ordered a modification of Mr. Fielder's supervision conditions to include substance abuse testing and treatment, and ordered that Mr. Fielder be continued on supervision until his next hearing, which is currently scheduled to take place before Your Honor on October 17, 2016.**

### U.S. Probation Officer Recommendation:
It is respectfully recommended that this additional information be considered when Mr. Fielder appears before the Court. These matters have been reported to Assistant U.S. Attorney Lee Deneke.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
## UNITED STATES V. RANDY L. FIELDER, CASE NO. 3:12-00190

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** III

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003     PROTECT ACT PROVISIONS

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 3 years (Class B Felony) *18 U.S.C. § 3583(e)(3)* | 5 to 11 months *U.S.S.G. § 7B1.4(a)* | No recommendation |
| SUPERVISED RELEASE: | 5 years less any term of imprisonment imposed *18 U.S.C. § 3583(h)* | 2 to 5 years *U.S.S.G. § 5D1.2(a)(1)* | No recommendation |

18 U.S.C. § 3583(e)(3) The Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Pursuant to U.S.S.G § 7B1.3(a)(2), upon a finding a Grade C violation, the Court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision.

Respectfully Submitted

_____
James Foster
U.S. Probation Officer


Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. Defendant     Randy L. Fielder

2. Docket Number (Year-Sequence-Defendant No.)     3:12-00190-01

3. District/Office     Middle District of Tennessee

4. Original Sentence Date     July 22, 2013
   month day year

(if different than above):

5. Original District/Office     Same as above

6. Original Docket Number (Year-Sequence-Defendant No.)     Same as above

7. List each violation and determine the applicable grade (see §7B1.1):

| Violation(s) | Grade |
|---|---|
| Failure to Comply with Mental Health Treatment | C |
| New Misdemeanor Offense | C |

8. Most Serious Grade of Violation (see §7B1.1(b))     | C |

9. Criminal History Category (see §7B1.4(a))     | III |

10. Range of Imprisonment (see §7B1.4(a))     | 5-11 months |

11. Sentencing Options for Grade B and C Violations Only (Check the appropriate box):

   ■ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

   (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

   (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available. Any term imposed upon revocation shall be ordered to be served consecutively to any sentence of imprisonment, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation. § 7B1.3(f)

Defendant: <u>Randy L. Fielder</u>

12. Unsatisfied Conditions of Original Sentence

    List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (<u>see</u> §7B1.3(d)):

    Restitution($): <u>0</u>          Community Confinement: <u>0</u>

    SA($):         <u>0</u>          Home Detention:        <u>0</u>

    Other:         <u>0</u>          Intermittent Confinement: <u>0</u>

13. Supervised Release

    If supervision is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (<u>see</u> §§7B1.3(g)(1)).

    Term: _____

    The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original sentence.

    Period of supervised release to be served following release from imprisonment:_____

14. Departure

    List aggravating and mitigating factors that may warrant a sentence outside the applicable range of imprisonment:

15. Official Detention Adjustment (<u>see</u> §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission, 1331 Pennyslvania Avenue, N.W. Suite 1400, Washington, D.C. 20004, Attention: Monitoring Unit

1/11/90